# CIRCUIT COURT OF BALTIMORE CITY.

Filed September 5, 1925.

JOHN S. BRIDGES
VS.
THE MILLER RUBBER CO. OF NEW YORK, A BODY CORPORATE.

*Barton, Wilmer, Ambler & Barton, Randolph Barton, Jr.,* and *Forrest Bramble* for complainant.

*Bartlett, Poe & Claggett* for defendant.

SOLTER, J.—

In this case there are two questions for the Court to decide; viz.: was there a mutual mistake justifying a court of equity in reforming the second contract and bond to meet the actual intention of the parties; and was there such a material misrepresentation by the defendant by a suppression of the truth as justifies the court in declaring the second bond a nullity.

My conclusions are as follows:

1. I adopt as the correct statement of the law the principles laid down by Judge Soper in the case of Newport News Shipbuilding and Dry Dock Co. vs. Isherwood et al., published in The Daily Record of July 22, 1925.

2. While the evidence is so conclusive as to admit of no doubt, that the plaintiff believed the second bond to be a mere continuation of the first and submitted to him solely for the purpose of preserving the liability while the second contract was being carried out as a continuation of the first, there is not sufficient evidence that the defendant so intended the second bond, and consequently there was no mutual mistake justifying its reformation by a court of equity. That while the plan of the defendant in pyramiding bonds upon what are substantially continuing contracts is illogical and would in a set of contracts continuing an agency business over any great length of time become topheavy and impose great hardship upon the agent, the documents themselves, nevertheless, show separate contracts and separate dissociated bonds and the plaintiff must therefore be presumed to have had knowledge of their legal import.

3. There was no closing of accounts under the first contract at its expiration, and it was clearly admitted by the witness Wetzel that there never had been any intention by the defendant of liquidating the business under the first contract, but that the scheme was to continue as though there was one contract in existence, thus enabling both the principal and the obligee to obtain the benefit of the goodwill created by the first contract, enabling the principal by it to recoup losses created under the first contract through a later contract. On the other hand, this made it possible for the principal to become more heavily involved according to the fortunes of the business. The evil effect of this as affecting the surety is that it inevitably postpones indefinitely any final accounting between the parties and the presentation of any claim against the surety.

The viciousness of this manner of carrying forward the business from one contract to another is exemplified in the Steinsnyder account. At the time of entering into the second contract and permitting the surety to execute the second bond, it must have been apparent to the creditor that this loss would absorb the first bond unless the principal had sufficient resources to meet it, and there is nothing in the evidence to show that the obligee had any faith in the resources of the principal upon an asset and liability basis. Had the first contract been closed by an actual liquidation of the business, the loss would have been actually brought home to the plaintiff with the resulting op-

portunity of lessening his liability upon the second bond by appropriate proceedings to immediately close the business. It must not be overlooked that the continuation of the business without any complaint or explanation to the surety would ordinarily imply that the first contract had been worked out successfully by the principals.

However, this may be and believing that these acts deserve severe criticism they must be related to the principles of law controlling principal and surety. In this case these acts relate themselves to the question of mutual mistake and that of delay in proceeding against the surety. I have already said that from the evidence in this case I must believe that it was the purpose of the defendant to exact separate contracts and bonds. Upon the matter of delay the law is well established that mere delay in asserting any claim against the surety, short of the period of limitations will not be a defense upon the bond.

The case narrows, itself, therefore, to the question as to whether the failure to notify Mr. Bridges of the Steinsnyder loss was under the circumstances of this case the suppression of a material fact. In the cases of Lake vs. Thomas and Wright vs. Brewing Company, there is room for a possible inference that fraudulent concealment can never be charged against a creditor unless he either procured the surety's signature, or was actually present when the instrument was executed and then misrepresented or concealed essential facts. I understand the defendant's counsel to contend this to be the law under these Maryland decisions. In the present case the obligee had notice who would be the surety before any acts of performance were undertaken, although it did not actually solicit the bond nor was it present. In view of this fact, I would be loath to accept the broad principles above stated as correctly interpreting these cases. Judge Cardozo in the nature of Judicial Process, p. 109, says: "Other relations in life, e. g. those of trustee and beneficiary and principal and surety impose a duty to act in accordance with the highest standards which a man of the most delicate conscience and the highest sense of honor might impose upon himself. In such cases to enforce adherence to those standards becomes the duty of the judge."

A comprehensive statement of the whole subject which to my mind answers the requirements of Judge Cardozo is found in Pingrey on Suretyship, Sec. 106, which is as follows:

"If the creditor knows or has good grounds for believing that the surety has been deceived or mislead, or that he was induced to enter into the contract in ignorance of the risks of which he has knowledge, *and he has no opportunity before accepting his undertaking* to inform him of such facts, good faith and fair dealing demand that he should make such disclosure to him. If he accepts the contract without doing so, the surety may afterwards avoid such execution of the instrument as a fraud. However, if there is nothing in the circumstances to indicate that the surety is being misled or deceived or that he is entering into the contract in ignorance of the facts materially affecting the risk, the creditor is not bound to seek him out, or without being applied to communicate to him information as to facts within his knowledge. In such case he may assume that the surety has obtained information for his guidance from other sources, or that he has chosen to assume the risks of his undertaking, whatever they may be."

Therefore, assuming a case where the obligee or creditor has neither solicited the surety nor was actually present when the obligation was signed, and the surety fails to make inquiries of the creditor, it seems to me there must be something definite to indicate to the creditor that the surety is entering upon the contract in ignorance of facts materially affecting the risk, and if there is nothing in the circumstances of the case to so show, he may assume that the surety has obtained information for his guidance from other sources, or has chosen to assume the risks of his undertaking whatever they may be.

So the principles applying to this case reduce the issue to the narrow question of whether under the circumstances the defendant had reason to believe that Mr. Bridges had no knowledge of the Steinsnyder loss. In this case the principal was the son-in-law of the surety and presumptively their relations were closer than mere business acquaintances. Presumptively from the defendant's standpoint he knew a great deal about the business carried on by

the principals. It is true that he did not, and that he was being deceived by them. As a matter of fact his failure to make inquiries of the principals and also of the creditor was occasioned probably by his belief that he was upon only one bond, and to him the continuation of the business under a second contract was a clear indication of the success of the first. Looking at the situation from the standpoint of the creditor as well as the surety, I find no warrant for charging the creditor with having reasonable belief that Mr. Bridges did not know of the Steinsnyder loss.

In a Mississippi case the following conclusion is stated in the opinion:

"It follows that the creditor is under no obligation without inquiry to disclose to the surety that the principal has not paid a particular indebtedness, and especially is this true when the surety is also a surety for the previous indebtedness on another contract, for the creditor has the right to presume that the surety, not having made any inquiry of him has ascertained the state of the previous contract." See Southwestern Co. vs. Wynnegar, 111 Miss. 412.

In addition to the many excellent authorities cited by counsel on both sides, I would add the case note to Copper Process Co. vs. Chicago Bonding and Insurance Co. 8 American Law Reports An. p. 1485.

For the aforegoing reasons, I will sign a decree in favor of the defendant against the plaintiff for the full amount of the two bonds.